Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Patrick J. Cashman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

AUG 3 0 2023

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | Case No.: 2:22-CR-52-TOR-6 |
|---|---|
| Plaintiff, | Plea Agreement |
| v. | |
| AUSTIN LIMACHER, | |
| Defendant. | |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, and Defendant Austin Limacher ("Defendant"), both individually and by and through Defendant's counsel, Sandy Baggett, agree to the following Plea Agreement.

1.  Guilty Plea and Maximum Statutory Penalties

Defendant agrees to enter a plea of guilty to Count 12 of the Superseding Indictment filed on June 7, 2022, which charges Defendant with Possession of Unregistered Firearm, in violation of 26 U.S.C. §§ 5841, 5845(a), 5861(d), and 5871, a Class C felony.

PLEA AGREEMENT - 1

Defendant understands that the following potential penalties apply:

    a. a term of imprisonment of not ~~less~~ more than 10 years ~~and up to a lifetime~~; *[handwritten: RJE 8/30/23, SMS, ATL]*

    b. a term of supervised release not to exceed 3 years;

    c. a fine of up to $250,000; and

    d. a $100 special penalty assessment.

2. <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision, up to the following terms:

    a. 5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b. 3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

    c. 2 years in prison if the offense that resulted in the term of Supervised Release is a class C or D felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

PLEA AGREEMENT - 2

Defendant understands the following:

    a.    sentencing is a matter solely within the discretion of the Court;

    b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

    f.    the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4. <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

    a.    pleading guilty in this case may have immigration consequences;

    b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

    c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

PLEA AGREEMENT - 3

   d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

  5. <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

   a. the right to a jury trial;
   b. the right to see, hear and question the witnesses;
   c. the right to remain silent at trial;
   d. the right to testify at trial; and
   e. the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

  6. <u>Elements of the Offense</u>

The United States and Defendant agree that in order to convict Defendant of Possession of Unregistered Firearm, in violation of 26 U.S.C. §§ 5841, 5845(a),

PLEA AGREEMENT - 4

5861(d), and 5871, the United States would have to prove the following beyond a reasonable doubt.

    a. *First*, on or about April 26, 2022, within the Eastern District of Washington, Defendant knowingly possessed firearms, to wit: a firearm suppressor identified as a 6 inch 5/8-24 Black New 1226, bearing no tax stamp, markings, or serial number; and a firearm suppressor identified as a 6 inch ½-28 Black New 1226, bearing no tax stamp, markings, or serial number;

    b. *Second*, the Defendant was aware that the firearms suppressors were suppressors; and

    c. *Third*, the Defendant had not registered the firearm suppressors with the National Firearms Registration and Transfer Record.

7.    Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

In August 2021, the Federal Bureau of Investigation (FBI) and United States Air Force Office of Special Investigations (AFOSI) initiated an investigation into Co-Defendant Airman John I. Sanger. The investigation involved the use of an undercover agent (UC). During the investigation into Airman Sanger, the FBI and AFOSI learned Sanger was able to secure stolen military ammunition from a member, later identified as Co-Defendant Nathan Richards, of the Fairchild 92nd

PLEA AGREEMENT - 5

Security Forces Squadron Combat Arms Training Management (CATM) section. The CATM is responsible for ensuring members of the Air Force are trained and combat ready to safely use and maintain all types of small arms. Richards invited Sanger, who in turn invited the UC, to go shooting with he and other members of CATM at Fishtrap Lake, in the Eastern District of Washington.

On March 12, 2022, the UC, Sanger, Richards, Co-Defendant Eric Eagleton, and others, not including the Defendant, arrived at Fishtrap Lake and engaged in target shooting using stolen ammunition from the U.S. Air Force's CATM section. At the conclusion of the event, Sanger was provided additional stolen ammunition from Richards for his personal use. Sanger subsequently provided the UC a small portion of the stolen ammunition.

Based upon the March 12, 2022 event and other investigative steps, the FBI and AFOSI executed a series of search warrants at Sanger and Eagleton's residences on April 26, 2022. Simultaneous to the execution of the search warrants, members of the CATM, including the Defendant, were brought to local AFOSI office to be interviewed. During the interviews, the FBI and AFOSI obtained evidence indicating Defendant possessed stolen ammunition at his on base residence. Upon securing and executing a military search warrant for the Defendant's residence, agents located approximately 4,000 to 6,000 rounds of suspected stolen government munitions in various calibers. Additionally, special agents also located two suspected stolen M4 upper receivers, one suspected stolen M16A1 upper receiver, and other suspected stolen items from CATM. The Defendant stipulates the stolen ammunition was ammunition belonging to the United States Air Force and that the ammunition traveled in interstate commerce.

Additionally, during the execution of the search warrant, special agents located two firearm suppressors, identified as:

PLEA AGREEMENT - 6

- a firearm suppressor identified as a 6 inch 5/8-24 Black New 1226, bearing no tax stamp, markings, or serial number; and
- a firearm suppressor identified as a 6 inch ½-28 Black New 1226, bearing no tax stamp, markings, or serial number.

Subsequent testing by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Firearms Laboratory concluded both devices qualified as suppressors and required registration with the National Firearms Registration and Transfer Record.

The Defendant stipulates that he knew the firearm suppressors were in fact suppressors and that he had not registered the suppressors with the National Firearms Registration and Transfer Record.

8.  The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss:

Count 1 – Conspiracy to Commit Theft of Government Property and Possession of Stolen Ammunition, in violation of 18 U.S.C. § 371;

Count 9 – Possession of Stolen Ammunition, in violation of 18 U.S.C. §§ 922(j), 924(a)(2); and

Count 16 – Receiving Stolen Government Property, in violation of 18 U.S.C. § 641.

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

PLEA AGREEMENT - 7

9.  United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a.  Base Offense Level

The United States and the Defendant agree his base offense level is 18. U.S.S.G. § 2K2.1(a)(5).

b.  Specific Offense Characteristics

The United States and Defendant make no agreements as to the application of any other specific offense characteristics. The parties are free to argue for or against the application of any specific offense characteristic.

c.  Acceptance of Responsibility

The United States will recommend that Defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), if Defendant does the following:

    i.  accepts this Plea Agreement;
    ii. enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;
    iii. demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;
    iv. provides complete and accurate information during the sentencing process; and
    v.  does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for

PLEA AGREEMENT - 8

acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

   d. <u>Administrative Separation from the United States Air Force</u>

  The Defendant acknowledges, independent from his plea of guilty in this matter, the United States Air Force may seek to administratively separate him from the service with an other than honorable characterization of service. The Defendant further acknowledges that a plea of guilty in this matter will likely have significant impact on his future service. The Defendant acknowledges, based upon his plea of guilty in this matter, that he has been notified of his right to proceed to board proceedings and intends to waive his right to a board.

   e. <u>No Other Agreements</u>

  The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

   f. <u>Criminal History</u>

  The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

  10. <u>Incarceration</u>

  The United States agrees to recommend a sentence no higher than the low end of the applicable guideline range as determined by the Court at sentencing.

  Defendant may recommend any legal sentence.

PLEA AGREEMENT - 9

11. <u>Supervised Release</u>

The United States and Defendant each agree to recommend 3 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

12. <u>Criminal Fine</u>

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13. <u>Abandonment</u>

Defendant agrees to abandon the following listed assets to the Federal Bureau of Investigation (FBI):

- a firearm suppressor identified as a 6-inch 5/8-24 Black New 1226, bearing no tax stamp, markings, or serial number; and

PLEA AGREEMENT - 10

- a firearm suppressor identified as a 6-inch 1/2 -28 Black New 1226, bearing no tax stamp, markings, or serial number

The Defendant agrees to take all steps as requested by the United States and FBI to effectuate the abandonment of the assets to FBI and hereby agrees to execute any and all forms and pleadings necessary to effectuate such abandonment. Defendant consents to the disposal, including destruction, of the assets.

The Defendant waives any right he might otherwise have had to receive notice or a hearing with respect to any motion, pleading, order, or any other action that FBI might take, in its sole discretion, to carry out the abandonment, disposition, and destruction of the assets. Defendant's waiver includes, without limitation, all common law, statutory, and constitutional claims or challenges, on any grounds, arising at any time from, or relating to, the seizure, abandonment, disposition, and destruction of assets, including any such claim for attorney fees and litigation costs.

14. <u>Mandatory Special Penalty Assessment</u>

Defendant agrees to pay the $100 mandatory special penalty assessment per count of conviction to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

15. <u>Payments While Incarcerated</u>

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. <u>Additional Violations of Law Can Void Plea Agreement</u>

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of

PLEA AGREEMENT - 11

sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17. <u>Waiver of Appeal Rights</u>

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant expressly waives all of Defendant's rights to appeal Defendant's conviction and the sentence the Court imposes.

Defendant expressly waives Defendant's right to appeal any fine or term of supervised release order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18. <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a. this Plea Agreement shall become null and void;

    b. the United States may prosecute Defendant on all available charges;

    c. The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another

PLEA AGREEMENT - 12

charging instrument, or were not charged because of this Plea Agreement; and

    d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and defenses Defendant might have to the United States' decision about how to proceed, including a claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

19.   <u>Integration Clause</u>

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

//
//
//
//

PLEA AGREEMENT - 13

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____        8-30-2023
Patrick J. Cashman                              Date
Assistant United States Attorney

PLEA AGREEMENT - 14

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____    30 AUG 23
Austin Limacher                                  Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____    8/30/23
Sandy Baggett                                     Date
Attorney for Defendant

PLEA AGREEMENT - 15